Good morning, your honors. Tim Eaton, and I represent the defendant, Pepper Construction, who is the appellant in this matter. Well, just a brief fact of the matter, I know you're aware of the facts, but I think it's so I'll just briefly go over them. The plaintiff slipped and fell on black ice on the side block that was adjacent to our parking lot. The fall occurred in late January, and on several occasions during that month, the parking lot had been plowed, and snow had been moved to the east side of the parking lot. There was testimony that Pepper's custodian checked the lot twice a day. There was also testimony by the plaintiff that he did not see any of the black ice that he fell on until after he fell, and he felt it. So that is the context in which some of these issues arise. This case from the beginning had been tried as a premises liability case. The complaint, and the plaintiff is a master of his complaint, stated specifically in paragraphs one through four that the premises that were owned by Pepper had to be maintained. Paragraph nine is probably the most telling, because this is clearly a requirement, a premises liability law that would not be in the ordinary negligence case. That the defendant should have known that if the plaintiff exercised care, he would not have his attention drawn towards the black ice. And then paragraph 12 said Pepper knew or should have known that the premises were defective or dangerous. And then finally in paragraph 12, there was also an allegation that the condition on the premises had caused a dangerous condition on the sidewalk. Now, if I'm correct, the issue's instruction indicated that the plaintiff was required to prove notice? Yes. Okay. That is correct. And Plaintiff points out in their brief that this issue of premises liability, Your Honors, did not arise until the instruction conference. And that's simply not true. It arose in the original complaint. It arose from the first complaint, first amended complaint. And all during the trial, the defendant had designed the defense towards the elements that had to be proven on premises liability. Well, we won't get into too much whether this must be proven under the six points necessary for a premises liability case or the three issues necessary for a simple negligence case. I want you to get to the idea, the issue of constructive notice, which is the gist of your arguments. It is. I mean, I should indicate, by the way, that you cannot appeal from the denial of a directed So, go ahead. Let's talk about constructive notice. Sure. Absolutely. Your Honor, the jury was instructed, and this is also true in the plaintiff's complaint in paragraph nine, as to whether or not, first, that there was an unnatural accumulation of ice on the sidewalk, which presented a reasonable risk of harm to people on the sidewalk. Second, that the defendant knew or in the exercise of ordinary care should have known of both the condition and the risk. The condition that they were instructed on was the black ice. There was no testimony at trial that anyone at Pepper knew that there was black ice, and that's the actual. But in terms of constructive, there was no indication at all from anyone that they were aware that there had been melting snow that had gone to the sidewalk and had refrozen and was black ice, because black ice, by definition, is invisible. Let's explain. Sure. It's my understanding that the lot was plowed on January the 21st, 2012, by an outside contract. Correct. And this fall took place on January the 27th, 2012. Yes. The expert testifying for the plaintiff, Schroeder, I think his name was, says that the defect, quote unquote, in the parking lot, was the slope that permitted snow that was parking lot and onto the adjoining sidewalk, which he says is what occurred and caused the black ice upon which the plaintiff fell. Now, there are climatological reports here. There was testimony by Schroeder. It was the way he found when he consulted the Internet. And it would appear that the temperatures from January the 21st through January the 27th fluctuated. There were extended periods early on in that period where the temperature rose above freezing. Yes. And if snow is piled and temperatures rise above freezing, do we really need someone  Well, first of all, I think in order to have Pepper on constructive notice, there had to be circumstances that they had to be aware of that would lead to the conclusion that the snow would be melting. Well, if one accepts Schroeder's theory and the facts that he testified to because of the slope, it necessarily follows that if the ice or the snow that was piled on the parking lot and onto the sidewalk. Let me correct just one thing, Your Honor. Schroeder said that the slope of the parking lot was up to industry standards. He had no criticism of the slope as related to the parking lot. No, his criticism was that the slope was extreme and would cause the meltwater to run through the parking lot and onto the sidewalk if the snow was piled on the eastern wall. We know the snow was piled on the eastern wall because fortunately in this case, we have a photograph that was identified by Bruno of the scene at the time of the occurrence. So it's there. Snow's on the eastern wall. From the 21st to the 27th, the temperature fluctuates. That necessarily means there was meltwater. And if, according to Schroeder, because of the How can one deny that you would have noticed that the water from your snow pile was finding its way to the adjoining sidewalk? There is no indication that anyone at Pepper Construction had any knowledge or even circumstantially would have known that had that snow melted in the month of January, that it was going to flow to the north wall and then bypass the drain and get on the sidewalk. I know Schroeder had that experiment. It was not contested. But that's to prove and the purpose of his testimony was to prove how the ice was formed and how it got there. It had nothing to do with notice or Pepper. Hold on. This is six days. Six days of fluctuating temperature, freezing, not freezing. If that water is melting and it's flowing out of the sidewalk, remember constructive notice is not only new but should have known. Now, how can you have a parking lot with a pile of snow along the eastern wall that's melting and flowing onto an adjoining sidewalk without seeing it? Your Honor, there has to be evidence other than I know you can have circumstantial evidence to prove it entirely. But there has to be some indicia of evidence, which there was not here, that would show that Pepper had reason to be on alert that this pile of snow would have melted, that it would not have gone to the drain, that it followed a path along the north wall, that it went onto the sidewalk and didn't go onto the grass of the curb and then froze. The only thing I'm suggesting to you is the jury had to make some decisions in this case. They had to make some decisions to determine whether they believed Schroeder. They obviously did. Schroeder's argument was if the snow is piled on the eastern edge, the melt water is going to run onto the sidewalk. That's exactly what he said because of the slope of the law. So if the jury accepts that fact as true, and we know that the temperature fluctuated for a six-day period before this man fell, wouldn't it be a quantum leap in logic for the jury to determine that Pepper should have known that it was winding up on the sidewalk? Your Honor, I do not believe so. Well, in addition to that, remember what the plaintiff testified to. He testified that he slipped on ice and saw the trail of the ice going back into your parking lot. To the drain, actually, is what the assessment was. Which would mean that even he thought it had come down to the drain and then from the drain to the sidewalk, which is what the plaintiff contested. But whether they believed Schroeder or not, that was to prove that there was ice and where it came from. That still is different from actual constructive notice as to whether Pepper knew. The question becomes, is six days enough to charge her with knowledge? If it had happened two hours after the snow was plowed and it was plowed at night, you'd have a great argument. There's no notice. But in this particular case, you've got a six-day hiatus when it's fluctuating. Now, there seems to be debate as to exactly how much it was fluctuating, whether you believe Schroeder in his consultation with the Internet or you believe the climatological reports by the National Weather Service. That's another issue. But the problem that I have with this case is the period of time that passed between the plowing and the piling and the ultimate injury. So, Your Honor, I think it comes down to the issue of policy. If this Court were to say that Pepper should have known because of the fluctuation in the month of January that snow might melt when it hits 34, 35 degrees and then freezes again at night, if that's going to be the standard that they should have known and they'll be liable for that, it seems to me that's an unwise standard because anyone that shovels their snow in their home sidewalk that could go onto a public sidewalk, in a business parking lot, it seems to me that we shouldn't hold them to the standard of what climatological reports would have shown later, what an expert would have said later as to how the melt got there when they assumed that it was going to the drain and that he said that the slope of the lot met industry standards. So under those circumstances, it seems to me that it would not be wise to hold them to that level of notice, whether it should have been, should have known. I'm happy to continue on this line, but there were some other issues raised by the plaintiff that I thought I would just address real quickly, and that is their argument that, well, notice isn't required here because, one, there should have been no bearing negligence case, which was not raised to the very end. I don't know about Mitch Huffman, but I certainly don't want to hear that argument. Okay, very good. And the other question is whether notice was even required if there was a dangerous condition on the parking lot. That's Horniak. Horniak settled the issue. Yes. The contractor pushed the snow to the eastern wall, not Pepper. And Horniak is the one who stood for the proposition that no notice was required to hold the contractor liable, but notice was required to hold the landowner liable. Absolutely, and they were in the position of the owner, and so that case would not apply. They also looked at cases like Weed v. Walmart, the Piper case, the Wing case, where there were clearly identifiable dangerous conditions immediately at the time that the board, with the rest of the houses allowed to be in the aisle at Walmart, to the issue of the faux rug which someone fell over at the entrance. This is clearly not that case. This is not a case where there was a dangerous condition immediately. Several things had to happen. The snow had to melt. It had to bypass the drain. It had to run on the walk. It had to refreeze as opposed to go to the curb. So there were a number of different circumstances. So back, Your Honor, to the original question that you asked. We do believe, one, they haven't shown actual notice, and then as far as constructive notice, which we did discuss, we also believe that under these circumstances, it would not be proper or fair or wise policy to hold Pepper to constructive notice based upon what was shown at trial. There was no indication that Pepper was aware or should have been on notice as to the fluctuating temperature. There was no... Wait a minute. Hold on a second. The guy walking every day. He checked it twice a day. That's what I'm saying. He would have known the fluctuation of the wet. Absolutely. And he didn't see anything. No, no, no. Wait a minute. Okay. Sure. Are you telling me that you have evidence that a person that lives in Chicago should know when it's cold out and when it's warm out? No. Well, I mean, that is the evidence that's presented to the jury. But as far as Pepper was concerned, I mean, we're not talking about something that went from 32 to 42. We're talking in the 30s, and to hold them to the knowledge, at 34 or 35, there may be some melting snow that would run onto the sidewalk. It seems to me that's not enough. to prove constructive notice, and particularly when you have someone who is making the effort every day to check the parking lot to see if it's safe. And the courts, this court and other courts, have treated snow and ice differently because they want to incentivize people to plow it, get it off. Because if they hadn't plowed it and it had been just a natural accumulation, obviously it wouldn't be here under those circumstances. But then it would melt parking lot wide and come down that driveway. Here they at least isolated it into one area with the assumption it was going to go to the drain because it's soaked with a lot. We've met industry standards, according to Mr. Schroeder. So we're punishing people, it seems to me, for trying to take action proactively. Well, your opponent's speech is going to be, plow your lot but don't plow and pile it up on the eastern wall. And there was no way to know, one, in the month of January, that there would be those fluctuating temperatures that might cause it to melt if it was on the eastern wall. There's no evidence that it was not going to go to the drain if it did melt. The experiment that was done was done, of course, after the fact. And Pepper would have no way of obviously anticipating that if this is going to happen, it's going to bypass the drain. And I think those are the facts that we have to deal with. Do you want to touch on your remitter argument? I do, very briefly, Your Honor. I'm through with your time. There are two things that I just wanted to emphasize. Number one, we are not contesting medical expenses. We're not contesting pain and suffering. And a lot of what the plaintiff focuses on in their brief would relate to those two issues. What we are contesting is the past and future loss of normal life and the disfigurement. Because in both instances, in one, the jury doubled the amount that was requested by the plaintiff, and in the other, tripled the amount that was requested by the plaintiff. And based on the evidence that was presented, we do not believe it supports a verdict of a million dollars on the loss of future and past normal life and also on the issue of disfigurement. You have to be careful. You make reference to awards in other cases to support your argument. The Supreme Court says you can't do it. You can't do it and you shouldn't do it. Okay. What we were suggesting, Your Honor, and I appreciate that, the element that we're dealing with was reasonable range. And when you use the word range, it seems to me you have to have some numbers that support a range. And that's the reason why it was presented below and why it was presented above. I appreciate what you're saying. But I think the most important thing is that the plaintiff himself through his counsel did not ask for these numbers. The jury doubled and tripled them, and there was just no evidence to support it. Okay. We'll give you time for rebuttal. Thank you very much. Response? Good morning, Your Honors. Michael Rasak here on behalf of the plaintiff's affilee, Michael Burke. The discussion has obviously shown me the Court's well aware of the issues in the case.  The only thing I can add to the fact that the pepper should have been aware that snow put on the east side would melt and reach the sidewalk, is that in addition to the experiment by Mr. Schroeder, which showed that inevitably, if you put snow there and it melted, it would go there. The photo shown of the jury taking the morning of the accident, which is at page E96 of the record, shows apparently in the glare of the rising sun, because this happened just at sunrise. You can see on both sides of the entrance to the pepper parking lot, the shiny surface where either water or ice is going from the lot down to the street, and on the right-hand side of that photo is precisely where the water flowed when Mr. Schroeder did his experiment. The fact that their main person, inspector, did not see it, of course, and Russell said it doesn't matter if somebody there said he didn't see it. More importantly, nobody ever asked that gentleman, if on all of those trips around the lot twice a day for all those days, did you ever see anything melting? No one asked him that question. I presume that defense counsel did not ask that question because he didn't want the answer. That would seem to be illogical. Let's not lose sight of that. The defense counsel wasn't the burdened party. You were. Correct. They had no duty to come forward with a burden of proof, but the bottom line is that there is no such evidence. The only evidence here is what the jury saw and what this court now saw in terms of where water will flow if you put snow there. If you put snow there in January, the cases, as the court said, it's common sense. The cases have said it's common sense. A number of cases have referred to the cycle of thawing and freezing in the winter. The temperature range here was such that the water was going to freeze, and significantly there's no other source for the ice here. I believe our experts said there simply was no other source. It had to come from that melting snow. The sidewalk was properly constructed, as in a couple of the other cases that we talked about, including the Blake case. There was no snowfall, no precipitation in the days preceding this incident that could have dropped this ice here without warning to anybody. It just didn't happen. It's almost the perfect example of constructive notice. I don't think I could construct it, no pun intended, even better. And as to the question of the remitted term, as the court has some more points about that, one of the things that I thought was interesting in the brief, as they said and mentioned it again this morning, that the plaintiff received more than his lawyer requested. I don't think that the defense side really wants this court to begin to take into consideration, as a factor in determining whether the award is proper, what the plaintiff's lawyer asked for, because that would cut both ways. I can see a region of lawyers up here saying, I asked for a million dollars and I didn't even get close to that. They didn't understand. That's simply not a factor. The cases that we furnished to the court said what somebody asked for is not a factor. Bottom line, it represented 42 years of problems that this gentleman is going to have with his ankle. Because of the arthritis? Because of the arthritis. The jury saw the x-rays in this case. I'm not sure I really appreciated why the arthritis would have started right away until I looked at the exhibit at E21 that's taken before they fixed his ankle. We've all seen many, many x-rays, but this literally shows that his tibia and fibula were ripped to the side of his tail as his ankle bone. And from looking at that, you can see why Dr. Holmes said there was no arthritis before. It started now. He said the injury will accelerate it. And he said the surgery was designed to minimize its progression. But the inference from Dr. Holmes' testimony is it will progress. And I think the jury, if anybody in that jury room has arthritis and knows somebody with arthritis, we all know what that inevitably will be. And that's not just a question of pain and suffering. That's a question of this man's ability to do what he chose to do for the rest of his life in terms of his recreation and working with people around him, including his family. It's going to change. We could have lost that. But we did. We won it. It's a question of manifest way. Unless the court has some specific questions for me, I have nothing to add. Nothing further. Reba? Thank you. Yes, Your Honor. I want to go back to the issue of constructive notice. To prove constructive notice, a plaintiff must show that a hazardous condition existed for a sufficient time and with reasonable care that the defendant should have discovered it. First of all, kind of a disconnect here is the jury was instructed that the condition that we knew or should have known was the black ice. That's exactly the way they were instructed, not the melting snow. So when it comes to Walt, shouldn't we have known that there was snow being melted that went onto the sidewalk and created a condition of black ice? That is not how they were instructed. That's not how it was pled in the complaint. Moreover, the question is whether or not the piles of snow that had some melting would have been a hazardous condition that we would have been aware. And it seems to me there's a couple of missing elements there. Number one, where would that snow have gone if it melted? There was a drain in the parking lot. There was proof later that that would not have taken the melting snow, but there was no evidence that we should have been aware of that. And the fact that it went onto the sidewalk, there was no evidence that anyone had ever fallen there. This was the first time. There was no evidence that that ice had been there longer than a day. In fact, the plaintiff himself testified the night before it wasn't there, and that was corroborated by a custodian who said it wasn't there. So the hazardous condition that was created from the melting snow was only there for perhaps one night, because first thing in the morning he's on his way to work, and he slips and falls on ice, which he said was not there the night before. The jury heard that. Our custodian said it was not there the night before. So I don't know how we could have been on any type of notice that this was going to happen. And the accumulation of snow, even if it's an unnatural accumulation, is not a dangerous condition in and of itself. There has to be other things that happen first, and it has to be there for a reasonable period of time. And it's not, well, back to your question, Justice Altman. You said, well, it had been there for six days, because they plowed the ice on the 21st and the accident occurred on the 27th. But there was no indication by anyone, nor was there any circumstantial evidence presented, that we would have known or should have known that it would melt, that it would miss the drain, that it would go on the sidewalk, that it would refreeze. There was simply no evidence to support the jury's verdict on that issue, particularly the way they were instructed, because black ice itself is invisible, and that was the condition that they were instructed on, and there's no evidence to support it. So what we're asking is, respectfully, that there be a judgment, notwithstanding the verdict, in favor of our client, or at the very least, a new trial. And if they were improperly instructed on the issue of what the condition is, melting snow versus black ice, then we can grapple with that issue. But we respectfully ask either a J&OV, a new trial, or a remittitor. And I understand, most people at my age do, that arthritis can be a painful condition. But he testified that after the third surgery he was pain-free. He testified that he was not able to do things when he was younger. Well, that happens to all of us. And there was no evidence of a support that large of an amount. So respectfully, we ask for that relief. Thank you. Counsel's thank you. That will be taken under advisement.